No. 04-99-00345-CV



Daniel ORTIZ,


Appellant



v.



UNITED SERVICES AUTOMOBILE ASSOCIATION and Gary Goral,


Appellees



From the 166th Judicial District Court, Bexar County, Texas


Trial Court No. 98-CI-04644


Honorable David Peeples, Judge Presiding



Opinion by: Paul W. Green, Justice


Sitting: Tom Rickhoff, Justice

 Alma L. López, Justice

 Paul W. Green, Justice


Delivered and Filed: November 22, 2000 


AFFIRMED


 In this wrongful termination case, appellant, Daniel Ortiz, challenges the trial court's
grant of summary judgment in favor of appellees, United Services Automobile Association
(USAA) and Gary Goral. In a single issue, Ortiz claims there are questions of fact on each
element of his claim that preclude summary judgment. We affirm the trial court's judgment.

Background

 Ortiz was terminated from employment with USAA on September 3, 1997 on grounds
he fraudulently misrepresented the time he worked, resulting in an overpayment of wages for
16.5 hours. Ortiz appealed his termination through USAA's Peer Grievance Process (PGP).
Before the PGP panel's recommendation (1) was announced, USAA determined the peer review
panel had no authority to review disputes involving fraud and informed Ortiz he should have
gone through Diversity, the Human Resources grievance process. Ortiz appealed through the
Diversity process and obtained a recommendation for reinstatement.

 After the Diversity ruling, USAA notified Ortiz he would be reinstated with back pay
and no interruption in his dates of service. However, he would be placed on two years
probation and was required to report to work on January 5, 1998. Ortiz objected to the
probation condition and also sought assurance he would not remain under the supervision
of Gary Goral, the supervisor who recommended his termination. Further, Ortiz asked for
more time to consider coming back. The restart date was pushed back at least twice. In
addition, USAA indicated it would discuss the possibility of placing Ortiz in a different
department under a different supervisor. On January 8, 1998, USAA revoked its offer of
reinstatement due to Ortiz's failure to return to work. 

 Ortiz filed suit, alleging USAA discriminated against him and violated the
employment contract created by the PGP manual. He also alleged Goral conspired with
USAA to discriminate against him. USAA and Goral filed their motion for summary
judgment on several grounds: (1) there was no evidence of unlawful employment
discrimination; (2) Ortiz had no evidence of wrongful discharge because he was an at-will
employee; (3) Ortiz was fully compensated by USAA's offer of reinstatement; (3) Goral
cannot be liable for employment discrimination in his individual capacity; and (4) there was
no evidence Goral conspired with anyone regarding the grievance process.

 Ortiz admitted there is no basis for an employment discrimination claim against
USAA or Goral. However, in the trial court, Ortiz claimed: (1) he was wrongfully terminated
in violation of an employment contract requiring USAA to offer reinstatement in accordance
with the recommendation of the PGP panel; (2) he was constructively discharged because
of intolerable working conditions; and (3) Goral conspired to interfere with Ortiz's
employment contract with USAA. In this appeal, Ortiz reurges his two claims against USAA
but has not briefed or argued any individual cause of action against Goral. 

Standard and Scope of Review

 We review a summary judgment de novo. To prevail on summary judgment, the
movant must show there are no genuine issues of material fact and the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Mgmt, Co., 690
S.W.2d 546, 548-49 (Tex. 1985). We review the evidence in the light most favorable to the
nonmovant, disregarding all contrary evidence and inferences. Weiss v. Mechanical
Associated Serv., Inc., 989 S.W.2d 120, 124 (Tex. App.-San Antonio 1999, pet. denied).
When a defendant moves for summary judgment, it must negate at least one element of the
plaintiff's cause of action or conclusively establish an affirmative defense. See Zale Corp.
v. Rosenbaum, 520 S.W.2d 889, 891 (Tex. 1975).

 In a standard summary judgment under Tex. R. Civ. P. 166a, once the movant has
established a right to summary judgment, the burden shifts to the non-movant to present
issues that preclude summary judgment. City of Houston v. Clear Creek Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979); Garcia v. John Hancock Variable Life Ins. Co., 859 S.W.2d
427, 430 (Tex. App.--San Antonio 1993, writ denied). On the other hand, Tex. R. Civ. P.
166a(i) invokes a no-evidence standard. Weiss, 989 S.W.2d at 123. When a party moves for
summary judgment alleging the nonmovant lacks evidence to carry its burden of proof, the
nonmovant must produce more than a scintilla of evidence raising a genuine issue of material
fact. Tex. R. Civ. P. 166a(i); Weiss, 989 S.W.2d at 123. The non-movant need not "marshal
its proof;" rather it "need only point out evidence that raises a fact issue on the challenged
elements." Tex. R. Civ. P. 166a(i) cmt.; accord Weiss, 989 S.W.2d at 123. When, as here,
the trial court's judgment does not specify the grounds on which the summary judgment is
granted, we may affirm on any meritorious ground presented to the trial court. State Farm
Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 

Discussion

 Ortiz has included Gary Goral as an appellee in this appeal. However, Ortiz does not
point to any facts from the record to support his allegations against Goral. There is no
argument or citation to authority regarding the allegations against Goral. Accordingly, any
claims against Goral are waived on appeal. See Tex. R. App. P. 38.1(f),(h); Valdes-Fuerte
v. State, 892 S.W.2d 103, 108 (Tex. App.-San Antonio 1994, no pet.); Atterbury v. Brison,
871 S.W.2d 824, 826-27 (Tex. App.-Texarkana 1994, writ denied).

Employment Contract

 The general rule in Texas is that employment for an indefinite term is at-will; that is,
an employee may be terminated at any time without cause. (2) See Sabine Pilot Serv., Inc. v.
Hauck, 687 S.W.2d 733, 735 (Tex. 1985); Nguyen v. Technical & Scientific Application,
Inc., 981 S.W.2d 900, 901 (Tex. App.-Houston [1st Dist.] 1998, no pet.); Brown v.
Montgomery County Hosp. Dist., 929 S.W.2d 577, 581-82 (Tex. App.-Beaumont 1996),
rev'd on other grounds, 965 S.W.2d 501 (Tex. 1998). This at-will relationship may be
altered by contract. See Whitehead v. Univ. of Tex. Health Science Ctr., 854 S.W.2d 175,
180 (Tex. App.-San Antonio 1993, no writ). However, an employee manual or handbook
cannot create an employment contract unless it specifically and expressly so states by
limiting the relationship and curtailing the employer's right to terminate. See Whitehead, 854
S.W.2d at 181; McAlister v. Medina Elec. Co-op., Inc., 830 S.W.2d 659, 664 (Tex.
App.-San Antonio 1992, writ denied). Although in certain circumstances the employer's
grant of post-termination rights may alter an employee's at-will status, at-will employment
is generally not changed by the existence of a grievance procedure for voicing complaints
or challenging termination. Compare Fed. Express Corp. v. Dutschmann, 838 S.W.2d 804,
809 (Tex. App.-Waco 1992) (post-termination rights may alter at-will status), reversed in
part, 846 S.W.2d 282 (Tex. 1993), with Cote v. Rivera, 894 S.W.2d 536, 541 (Tex.
App.-Austin 1995, no writ) (procedural right to challenge termination does not alter at-will
employment) and Renken v. Harris County, 808 S.W.2d 222, 225 (Tex. App.-Houston [14th
Dist.] 1991, no writ) (grievance procedure does not create employee contract). 

 Ortiz contends that USAA conceded the existence of an employment contract created
by the PGP, specifically the PGP manual. (3) Ortiz claims the grievance process created a
contract that required USAA to offer him reinstatement in accordance with the
recommendation of the PGP panel. (4) USAA argues the PGP did not limit USAA's right to
terminate Ortiz. At most, the PGP bound USAA to engage in the appeal process outlined in
the manual, which it did. Our review of the record reveals that counsel for USAA merely
agreed that USAA was bound by the terms of the grievance process as outlined. Accordingly,
we examine the parameters of that agreement. 

 Nothing in the PGP manual limits USAA's right to terminate or otherwise discipline
an employee for failure to follow company policy. The most the PGP requires is that USAA
provide the appeal process outlined in the manual. In Ortiz's case, this process was triggered
by his termination.

 Further, the PGP manual specifically states the peer review panel has no authority to
review terminations based on allegations of fraud, such as the falsification of time records
for which Ortiz was fired. Those grievances go to the Vice President of Diversity and are
investigated by a Diversity/Compliance Consultant, not a peer review panel. Nothing in the
PGP manual requires USAA to abide by the recommendation of the Diversity/Compliance
Consultant. Therefore, to the extent the PGP manual creates any contract between Ortiz and
USAA, it did not, by its own terms, require USAA to provide a peer review panel in this
situation. 

Breach of Contract

 Without argument or citation to case law, Ortiz says USAA's breach of the PGP
contract was not entirely remedied by USAA's offer of reinstatement with back pay and no
loss of seniority. The point is waived on appeal. See Tex. R. App. P. 38.1(h); Valdes-Fuerte,
892 S.W.2d at 108; Essex Crane Rental Corp. v. Striland Constr. Co., Inc., 753 S.W.2d 751,
756 (Tex. App.-Dallas 1988, writ denied). Further, as we have noted, there is no evidence
of a breach of contract. USAA was not required to convene a peer review panel. USAA
implemented the recommendation of the Diversity review by offering Ortiz reinstatement.
Nothing in the grievance manual binds USAA to make an employee "whole" through the
payment of damages or interest on back pay. Nothing in the PGP manual prohibits USAA
from imposing disciplinary measures such as probation for failure to follow company rules.
We overrule Ortiz's issue on breach of contract. 

Wrongful Termination

 Ortiz bases his wrongful termination claim on an alleged constructive discharge. He
acknowledges that USAA ultimately upheld the decision of the Diversity review in the
grievance process and offered to reinstate him. However, Ortiz claims the manner in which
his termination and reinstatement were handled made him reluctant to return to work without
some assurance of protection, resulting in a constructive discharge.

 Constructive discharge is an element of a wrongful termination case. See Passons v.
Univ. of Tex. at Austin, 969 S.W.2d 560, 562 (Tex. App.-Austin 1998, no pet.) (constructive
discharge serves as termination element in a discrimination case); Brown, 929 S.W.2d at 581-82 (constructive discharge may replace termination element of breach of employment
contract claim). Constructive discharge occurs when an employee is not fired but working
conditions are so intolerable that the employee has no choice but to quit. See Nguyen, 981
S.W.2d at 901. Constructive discharge substitutes for an express termination. See Hammond
v. Katy Indep. Sch. Dist., 821 S.W.2d 174, 177 (Tex. App.-Houston [14th Dist.] 1991, no
writ). 

 As previously discussed, a wrongful termination case must be based on some
exception to the at-will employment doctrine. Without evidence of prohibited discrimination
or retaliation and having failed to establish that USAA did not abide by the policies set out
in the PGP manual, Ortiz has no basis for an employment claim, whether based on express
termination or constructive discharge. 

Conclusion

 Because we hold Ortiz failed to present a genuine issue of material fact on each of his
claims against USAA and Goral, we affirm the judgment of the trial court.


 PAUL W. GREEN,

 JUSTICE


PUBLISH

1. During discovery in the lawsuit, it was revealed that the PGP panel would have recommended reinstatement.
However, this result was not revealed to Ortiz at the time he went through the review process.
2. There are exceptions for prohibited discrimination under federal and state statutes, and limited common law
prohibitions. See, e.g., Tex. Dept. of Human Serv. v. Hinds, 904 S.W.2d 629, 633-35 (Tex. 1995) (no termination in
retaliation for employee's reporting of illegal conduct under the Whistleblower Act or for filing claim for worker's
compensation); Sabine Pilot Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985) (no termination for employee's
refusal to perform illegal act); Passons v. Univ. of Tex. at Austin, 969 S.W.2d 560, 562 (Tex. App.-Austin 1998, no
pet.) (citing Tex. Lab. Code Ann. § 21.051 (Vernon 1996) (no discrimination based on race, color, disability, religion,
sex, national origin or age)). Ortiz does not base his claims on discrimination or retaliation.
3. Ortiz mentions an alleged contract between USAA and its employees not to use the "turnstile," or pass card,
time records for disciplinary purposes. The trial court struck Ortiz's affidavit testimony on this issue, the only evidence
of an alleged contract or agreement regarding the use of "turnstile" records. Ortiz does not challenge the trial court's
evidentiary ruling on appeal; therefore, any argument regarding a "turnstile" agreement is waived.
4. In his brief, Ortiz also makes the statement that the alleged contract prohibited USAA from terminating his
employment. An examination of the PGP manual reveals no such prohibition. In fact the grievance process is triggered
by an appealable termination.